FILED
TARRANT COUNTY
7/19/2024 9:18 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 153-354718-24

| | | |
|---|---|---|
| WHINSTONE US, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| IMPERIUM INVESTMENT HOLDINGS LLC, | § | TARRANT COUNTY, TEXAS |
| NATHAN NICHOLS, CHASE BLACKMON, | § | |
| CAMERON BLACKMON, NICHOLAS | § | |
| CERASUOLO, RHODIUM ENTERPRISES, INC., | § | |
| RHODIUM TECHNOLOGIES, LLC, AND | § | |
| RHODIUM RENEWABLES, LLC, | § | |
| | § | |
| DEFENDANTS | § | _____ JUDICIAL DISTRICT |

## WHINSTONE US, INC.'S ORIGINAL PETITION

Plaintiff Whinstone US, Inc. files this Original Petition against the above-named defendants.

### I.   PARTIES

1.  Plaintiff Whinstone US, Inc. ("Whinstone") is a Delaware corporation with its principal place of business in Rockdale, Texas.

2.  Defendant Imperium Investment Holdings LLC ("Imperium"), a Wyoming limited liability corporation formed in 2020, touts itself as "a private equity group that aims to bring worldwide application of high-performance computing through immersion cooling." Its managing partners—Nathan Nichols, Chase Blackmon, Cameron Blackmon and Nicholas Cerasuolo (collectively, the "Individual Defendants")—boast "a combined 40+ years of experience in industrial scale project management, venture capital, and private equity" having "completed over 1,200 projects/transactions ranging from $5MM to $7B with successful exits >$300MM." By virtue of owning 100% of the Class B common stock of Rhodium Enterprises, Imperium controls the voting power of Rhodium Enterprises and, thus, controls Rhodium

Copy from re:SearchTX

Technologies which is owned by Imperium (~62%) and Rhodium Enterprises (~38%). On information and belief, through its control of Rhodium Enterprises, Rhodium Technologies and Rhodium Renewables (collectively the "Rhodium Defendants"), Imperium directed, participated in, authorized, and/or ratified the complained of actions and conduct of the Rhodium Defendants. Although it has not qualified to transact business in Texas, Imperium maintains a principal office located at 7546 Pebble Drive, Fort Worth, Texas 76118. Imperium may be served with process through its registered agent: Corporation Service Company, 1821 Logan Avenue, Cheyenne, Wyoming 82001.

3.   Defendant Rhodium Enterprises, Inc. ("Rhodium Enterprises"), a Delaware corporation formed April 22, 2021, characterizes itself as "a founder-led, Texas based, digital asset technology company utilizing proprietary tech to self-mine bitcoin." In reality, Rhodium Enterprises is but a holding company, its only assets being 100% control over, and an approximately 38% ownership interest in the economic value of, Rhodium Technologies. Rhodium Enterprises maintains its principal place of business in Rockdale, Texas and may be served with process through its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.   Defendant Rhodium Technologies, LLC f/k/a Rhodium Enterprises, LLC ("Rhodium Technologies"), a Delaware limited liability company formed October 23, 2020, now directly or indirectly owns all outstanding equity interests in various subsidiaries through which the Rhodium Defendants operate. Rhodium Technologies maintains its principal place of business in Rockdale, Texas and may be served with process through its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Copy from re:SearchTX

5. Defendant Rhodium Renewables, LLC, a Delaware limited liability company formed March 17, 2021, engages in cryptocurrency mining operations at a facility leased from Temple Green Data LLC. Rhodium Renewables is, upon information and belief, a wholly-owned subsidiary of Rhodium Technologies. Rhodium Renewables maintains its principal place of business in Rockdale, Texas and may be served with process through its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

6. Nathan Nichols ("Nichols"), a Texas resident, controls 25% of the voting interests in Imperium. Through Imperium, Nathan Nichols indirectly owns voting and/or non-voting equity interests in Rhodium Enterprises and Rhodium Technologies. He also serves as an officer and/or director of Rhodium Enterprises and Rhodium Technologies. On information and belief, Nathan Nichols personally directed, participated in, authorized, and/or ratified the complained of actions and conduct of Imperium and the Rhodium Defendants. Nathan Nichols can be served at his residence located at 3000 Gracie Kiltz Lane #307, Austin, Texas 78758.

7. Chase Blackmon ("Ch. Blackmon"), a Texas resident, controls 25% of the voting interests in Imperium. Through Imperium, Chase Blackmon indirectly owns voting and/or non-voting equity interests in Rhodium Enterprises and Rhodium Technologies. He also serves as an officer and/or director of Rhodium Enterprises and Rhodium Technologies. On information and belief, Chase Blackmon personally directed, participated in, authorized, and/or ratified the complained of actions and conduct of Imperium and the Rhodium Defendants. Chase Blackmon can be served at his residence located at 4412 Summercrest Ct., Fort Worth, Texas 76109.

8. Cameron Blackmon ("Ca. Blackmon"), a Texas resident, controls 25% of the voting interests in Imperium. Through Imperium, Cameron Blackmon indirectly owns voting

Copy from re:SearchTX

and/or non-voting equity interests in Rhodium Enterprises and Rhodium Technologies. He also serves as an officer and/or director of Rhodium Enterprises and Rhodium Technologies. On information and belief, Cameron Blackmon personally directed, participated in, authorized, and/or ratified the complained of actions and conduct of Imperium and the Rhodium Defendants. Cameron Blackmon can be served at his residence located at 2204 Mistletoe Blvd., Fort Worth, Texas 76110.

9. Nicholas Cerasuolo ("Cerasuolo"), a Puerto Rican resident, controls 25% of the voting interests in Imperium. Through Imperium, Nicholas Cerasuolo indirectly owns voting and/or non-voting equity interests in Rhodium Enterprises and Rhodium Technologies. At all relevant times, he also served as an officer and/or director of Rhodium Enterprises and Rhodium Technologies. On information and belief, Nicholas Cerasuolo personally directed, participated in, authorized, and/or ratified the complained of actions and conduct of Imperium and the Rhodium Defendants. Nicholas Cerasuolo can be served at his residence located at 655 Ave., Roberto H. Todd, Suite 187, San Juan, Puerto Rico 00907.

## II. JURISDICTION AND VENUE

10. The Court has jurisdiction over the petition because: (1) the Court has jurisdiction over the parties (who have purposefully availed themselves of the benefits and protections of Texas law as detailed herein); (2) the Court has jurisdiction over the subject matter of the petition; and (3) the Court has jurisdiction to enter the relief requested herein. Further, the amount in controversy exceeds this Court's minimum jurisdictional limits.

11. Venue is proper in this Court because: (1) the subject matter of this Petition involves claims in which all or a substantial part of the events or omissions giving rise to the potential claim or suit occurred in Tarrant County; (2) the witnesses for Defendants reside in

and/or work in the State of Texas and within the jurisdiction of this Court; and (3) because there are multiple defendants, Whinstone's claims arise out of the same transaction, occurrence, or series of transaction or occurrences, and venue is proper as to one defendant, venue is proper as to all defendants. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(l),15.005. Further still, Whinstone asserts two or more claims arising from the same transaction, occurrence, or series of occurrences and one of the claims is subject to a mandatory venue provision contained in the at-issue redemption pursuant to the Withdrawal, Dissociation, and Membership Interest Redemption Agreement dated December 31, 2020 (the "Redemption Agreement"):

> "The Parties agree that any litigation arising in connection with this Agreement shall be conducted in Tarrant County, Texas."

TEX. CIV. PRAC. & REM. CODE § 15.004.

### III.   DISCOVERY CONTROL PLAN AND RULE 47 DISCLOSURE

12.    Whinstone will conduct discovery under Texas Rule of Civil Procedure 190.4, Level 3. Pursuant to Texas Rule of Civil Procedure 47, Whinstone seeks monetary relief of more than $1,000,000.00. The requested monetary relief will likely increase after discovery is completed.

### IV.   FACTUAL BACKGROUND

13.    In 2019, Whinstone commenced development of the largest Bitcoin hosting facility in North America (the "Facility"). After securing power agreements at below market rates to power the Facility's operations, Whinstone constructed preeminent infrastructure to support cryptocurrency hosting operations. With below market power rates and its best-in-class construction, development, and operations organization, Whinstone supports high volumes of cryptocurrency mining equipment available to customers that have, or desire to obtain, such equipment at an off-premises location.

Copy from re:SearchTX

14. In 2020, Imperium and Whinstone agreed to joint venture (Rhodium JV LLC ("Rhodium JV")) to mine cryptocurrency in Building C of the Facility. Imperium would fund the infrastructure build-out and acquire the equipment necessary to mine. In return, Whinstone agreed to contribute a portion of the Facility, provide services and make available up to 130 megawatts ("MW") of electricity at a rate below Whinstone's own discounted rate. Imperium and Whinstone would receive an 87.5% and 12.5% of "all the underlying economics", respectively, in Rhodium JV.

15. To memorialize their joint venture, Imperium and Whinstone executed that Operating Agreement for Rhodium JV LLC ("Operating Agreement") dated effective as of March 6, 2020. With supermajority voting control, Imperium designated itself Manager of Rhodium JV.

16. Consistent with the Operating Agreement, Whinstone executed a series of hosting agreements that provided for up to 130MW of electrical capacity at Building C. Specifically, Whinstone and Rhodium JV executed twenty hosting agreements, each for up to 5 megawatts ("MW") of power. Another hosting agreement executed by Whinstone and Rhodium 30mw LLC ("Rhodium 30MW") (believed to be a wholly owned subsidiary of Rhodium JV) provided for up to 30MW of electrical capacity. The below diagram illustrates the structure of the deal:



**WHINSTONE US, INC V. I**
**ORIGINAL PETITION** Page 6
4865-7653-6014.13

Copy from re:SearchTX

17. On information and belief, Imperium contributed little, if any, of its own capital to the joint venture. Instead, to fund the infrastructure build-out and acquire the necessary equipment, Imperium and the Individual Defendants (collectively, the "Imperium Defendants") sought capital from investors. But with no existing operations nor any track record in cryptocurrency mining, the Imperium Defendants could not quickly raise the needed capital from investors.

18. In December 2020, Whinstone agreed to redeem its voting and non-voting units and withdraw from membership in the joint venture, leaving the Imperium Defendants, whether directly or indirectly, the sole members of Rhodium JV.

19. Critical to its decision to withdraw as a member of Rhodium JV was the Imperium Defendants' assurance that, going forward, Whinstone would receive 12.5% of "all the underlying economics" generated from cryptocurrency mined from Building C. In exchange, Whinstone agreed to continue providing services and up to 130MW of electricity capacity at a rate below Whinstone's own discounted rate.

20. By way of illustration, below is a depiction of how "all the underlying economics" for Rhodium JV's operations should work following the redemption of Whinstone's membership stake:



21. Absent the Imperium Defendants' promises to pay Whinstone 12.5% of "all the underlying economics" generated from cryptocurrency mined from Building C, Whinstone would never agree to provide 130MW of power at a rate below its own cost of power—effectively subsidizing the Imperium Defendants' operation. After all, without "all the underlying economics" the Imperium Defendants promised, providing power to Building C results in approximately $2 million per month net loss to Whinstone. That neither makes economic sense, nor is it sustainable.

22. But, when the Imperium Defendants made this representation—repeatedly—they had no intention of honoring it. Instead, unbeknownst to Whinstone, the Imperium Defendants were laying the groundwork to dilute Whinstone's share of "all the underlying economics." The Imperium Defendants used newly and later formed entities to divert revenue away from Whinstone.

23. For example, the Imperium Defendants purportedly sold to investors 50% of the membership interests in Rhodium 10MW LLC ("Rhodium 10MW"), an entity formed after the redemption. If true, the illustration below reflects the ownership structure and flow of the underlying economic value of Rhodium 10MW:



24. The result—Whinstone does not receive 12.5% of "all the underlying economics"

as represented. Rather, it only receives, at best, 6.25% (not 12.5%) of "all the underlying economics" generated from operations conducted in Building C.

25. The Imperium Defendants repeated this exercise again and again. Using Rhodium 30MW, the Imperium Defendants stripped Whinstone of 30% of "all the underlying economics" from cryptocurrency mining operations conducted in part of Building C. That reduced Whinstone's 12.5% share to 8.75% for the profits generated by Rhodium 30MW. Next, the Imperium Defendants used Rhodium 2.0 LLC ("Rhodium 2.0"), formed immediately prior to the redemption, to gut 35% of "all the underlying economics" from cryptocurrency mining operations conducted in another portion of Building C. That dropped Whinstone's 12.5% share to 8.125% for the profits generated by Rhodium 2.0. Then, Rhodium Encore LLC ("Rhodium Encore"), formed after the redemption, was used to divert 50% of "all the underlying economics" due Whinstone from cryptocurrency mining operations conducted in a different part of Building C. The effect is, instead of 12.5%, Whinstone receives, at most, 6.25% for the profits generated by Rhodium Encore.

26. The Individual Defendants directed and/or controlled these transactions or were otherwise involved in the scheme to dilute Whinstone. But, by their own admissions, Whinstone never received, and the Imperium Defendants never intended for Whinstone to receive, 12.5% of the underlying economic value generated from cryptocurrency mining operations conducted in any portion of Building C.

27. But just diluting Whinstone was not enough for the Imperium Defendants; they wanted more. To that end, the Imperium Defendants intended to (and did) restructure the Rhodium organization (the "Rollup Transaction") to further enrich themselves.

28. Prior to the Rollup Transaction, the Imperium Defendants, directly or indirectly,

Copy from re:SearchTX

held economic interests in cryptocurrency generated from mining operations conducted in Building C ranging from 43.75% (Rhodium Encore, Rhodium 10MW) to 56.875% (Rhodium 2.0) to 61.25% (Rhodium 30MW). Collectively, upon information and belief, that economic interest stood at approximately 55.5%.

29. Using Rhodium Enterprises, the Imperium Defendants orchestrated the divestment of the individual investors' economic interests in, at least, Rhodium 30MW, Rhodium 2.0, Rhodium Encore, and Rhodium 10MW—membership interests that were transferred to Rhodium Technologies, an entity which the Imperium Defendants controlled and, directly or indirectly, maintained a membership interest. After completing the Rollup Transaction, the Imperium Defendants, directly or indirectly, held economic interests in cryptocurrency generated from mining operations conducted in Building C totaling approximately 62%, an approximately 6.5% increase.

30. As illustrated below, while leaving Whinstone at a diluted 6.25%, the Imperium Defendants used the Rollup Transaction to increase their economic interest in Rhodium 10MW's operations from 43.75% to 58.125% — a 32.86% increase:



31. Not satisfied, Defendants further diluted Whinstone by, upon information and belief, funneling revenues generated from cryptocurrency mining operations conducted in Building C to prop up other financially distressed and floundering Rhodium Enterprises subsidiaries. For instance, Defendants used revenue generated from operations at the Facility to keep Rhodium Renewables operations at its Temple, Texas cryptocurrency mining facility afloat. Without that support, Rhodium Renewables—which experienced devasting losses believed to run in excess of $2 million per month—could not have survived with pre-halving Bitcoin prices at or below $40,000.00. Even now, with post-halving Bitcoin prices hovering around $60,000.00, upon information and belief, Defendants continue to siphon revenues generated at the Facility to provide life-support to Rhodium Renewables.

## V. CAUSES OF ACTION

### A. Count I – Primary Liability under Section 33(B) of the Texas Securities Act (Against Imperium)

32. Whinstone incorporates and re-alleges in full the preceding paragraphs, as applicable.

33. Whinstone's 12.5% passive membership interest in Rhodium JV constitutes a security under Section 2(a)(1) of the Securities Act (*i.e.*, an investment contract).

34. Pursuant to the Redemption Agreement, Imperium "bought" (as defined by the Texas Securities Act) Whinstone's interest in Rhodium JV by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made true.

35. Specifically, Imperium's promise that Whinstone would receive 12.5% of "all the underlying economics" generated from cryptocurrency mined from Building C was false when made.

**WHINSTONE US, INC V. IMPERIUM HOLDINGS LLC, ET AL**
**ORIGINAL PETITION**                                                                                               Page 11
4865-7653-6014.13

Copy from re:SearchTX

36. Imperium further failed to disclose its scheme to use affiliated or subsidiary companies to circumvent Rhodium JV's payment obligations to Whinstone so that it could prop up other failing business ventures and enrich itself and the Individual Defendants.

37. Imperium's promises and omissions of fact were material.

38. Whinstone has suffered damages as a result of Imperium's false promises. Whinstone is entitled to recover its damages, costs, attorneys' fees, and pre- and post-judgement interest arising from Whinstone's sale of its membership interests in Rhodium JV to Imperium via the Redemption Agreement.

**B.     Count II – Control Liability under Section 33(F) of the Texas Securities Act (Against the Individual Defendants)**

39. Whinstone incorporates and re-alleges in full the preceding paragraphs, as applicable.

40. Whinstone's 12.5% membership interest in Rhodium JV constitutes a security under Section 2(a)(1) of the Securities Act.

41. The Individual Defendants qualify as control persons under Section 33(F) of the Texas Securities Act. Through their positions of control over Imperium as directors, officers, shareholders, and/or members, they had the power to (and did) directly or indirectly influence and control the activities of Imperium.

42. While in their positions of control, the Individual Defendants caused Imperium to violate Section 33(B) of the Texas Securities Act by making false promises to Whinstone in the acquisition of Whinstone's 12.5% interest in Rhodium JV.

43. Therefore, the Individual Defendants are jointly and severally liable to Whinstone for damages, costs, attorneys' fees, and pre- and post-judgement interest arising from the Whinstone's Rhodium JV membership interests sold to Imperium via the Redemption

Copy from re:SearchTX

Agreement.

### C. Count III – Aiding Liability under Section 33(F) of the Texas Securities Act (Against the Individual Defendants)

44. Whinstone incorporates and re-alleges in full the preceding paragraphs, as applicable.

45. Whinstone's 12.5% membership interest in Rhodium JV constitutes a security under Section 2(a)(1) of the Securities Act.

46. The Individual Defendants qualify as control persons under Section 33(F) of the Texas Securities Act. Through their positions Imperium as directors, officers, shareholders, and/or members, they had the power to (and did) directly or indirectly influence and control the activities of Imperium.

47. While in their positions of control, the Individual Defendants caused Imperium to violate Section 33(B) of the Texas Securities Act by making false promises to Whinstone in the acquisition of Whinstone's 12.5% interest in Rhodium JV pursuant to the Redemption Agreement.

48. Therefore, the Individual Defendants are jointly and severally liable to Whinstone for damages, costs, attorneys' fees, and pre- and post-judgement interest.

### D. Count IV – Fraud/Fraudulent Inducement (Against the Imperium Defendants)

49. Whinstone incorporates and re-alleges in full the preceding paragraphs, as applicable.

50. Each of the Imperium Defendants misrepresented to Whinstone that Whinstone would receive 12.5% of "all the underlying economics" generated from cryptocurrency mined from Building C. The Imperium Defendants made these misrepresentations so that Whinstone

would agree to transfer its interest in Rhodium JV to Whinstone via the Redemption Agreement.

51. The Imperium Defendants' (mis)representations were material because without them, Whinstone would not have agreed to provide the "Rhodium" entities rent-free access to the Facility, continued to provide the "Rhodium" entities below-market power, or have agreed to transfer its ownership interest in Rhodium JV to Imperium and entered into the Redemption Agreement.

52. Each of the Imperium Defendants knew that their representations were false or recklessly disregarded the truth of their representations when they made them.

53. Each of the Imperium Defendants intended for Whinstone to rely upon their representations and Whinstone justifiably relied on the Imperium Defendants' (mis)representations.

54. As a result of the Imperium Defendants' fraud, Whinstone has been significantly harmed in an amount to be proven at trial and Whinstone is entitled to damages, including benefit-of-the-bargain damages.

E. **Count V – Conspiracy (Against all Defendants)**

55. Whinstone incorporates and re-alleges in full the preceding paragraphs, as applicable.

56. Defendants combined to accomplish an unlawful purpose, and had a meeting of the minds as to that purpose—namely to obtain Whinstone's interest in Rhodium JV through a fraudulent promise that Whinstone would still receive the economic benefit of its ownership in Rhodium JV as described herein.

57. Defendants committed an unlawful, overt act to further the course of action by fraudulently inducing Whinstone into transferring its interest in Rhodium JV to Imperium, and,

as a result, Whinstone experienced injury.

58. Defendants are jointly and severally liable because they conspired together to accomplish their unlawful purpose.

## VI. CONDITIONS PRECEDENT

59. All conditions precedent to Whinstone's claims for relief have been performed or have occurred.

## VII. PUNITIVE DAMAGES

60. Whinstone also invokes Texas Civil Practice and Remedies Code Section 41.003 and seeks recovery of punitive damages against the Defendants for their fraud, malice, and/or gross negligence.

## VIII. ATTORNEYS' FEES

61. Whinstone is entitled to its reasonable attorneys' fees and costs incurred through trial and final appeal in accordance with Texas Civil Practice and Remedies Code § 38.001 and Section 12 of the Redemption Agreement.

## IX. RULE 193.7 NOTICE

62. Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, this shall serve as actual notice that Whinstone intends to use produced documents against the Imperium Defendants in pretrial proceedings and at trial. Accordingly, production of a document or documents in response to discovery requests by Whinstone authenticates the document or documents for use against the Imperium Defendants in any pretrial proceeding or at trial unless they object to the authenticity of any produced document or documents within the time limits particularly set out in Rule 193.7 of the Texas Rules of Civil Procedure.

Copy from re:SearchTX

## X. PRAYER

63. For the foregoing reasons, Whinstone US, Inc. prays that this:

    (i) Enter judgment against the Imperium Defendants on a joint and several basis on all of Whinstone's claims and award Whinstone damages, punitive damages, costs, attorneys' fees, and pre- and post-judgment interest; and

    (ii) Award Whinstone all such other and further relief that law and equity require.

Date: July 19, 2024                                    Respectfully submitted,

*/s/ Robert T. Slovak*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: 214.999.4334
Facsimile: 214.999.3334

**Attorneys for Plaintiff Whinstone US, Inc.**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Barbara Hodges on behalf of Robert Slovak
Bar No. 24013523
bhodges@foley.com
Envelope ID: 89995259
Filing Code Description: Petition
Filing Description: Whinstone v Enterprises et al Original Petition
Status as of 7/22/2024 9:30 AM CST

Associated Case Party: Whinestone US, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rob Slovak | | rslovak@foley.com | 7/19/2024 9:18:31 PM | SENT |
| Steven Lockhart | | slockhart@foley.com | 7/19/2024 9:18:31 PM | SENT |
| Jonathan MichaelThomas | | jmthomas@foley.com | 7/19/2024 9:18:31 PM | SENT |
| Brandon C.Marx | | bmarx@foley.com | 7/19/2024 9:18:31 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tanya Durham | | tdurham@foley.com | 7/19/2024 9:18:31 PM | SENT |
| Barbara Hodges | | bhodges@foley.com | 7/19/2024 9:18:31 PM | SENT |